UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| CHARLES FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 7:17-CV-68-REW-EBA |
| v. | ) | |
| | ) | |
| TOTAL RENAL CARE, INC., | ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Total Renal Care, Inc., d/b/a Raven Rock Dialysis (Raven Rock) seeks summary judgment. DE #30 (Motion). Charles Frazier opposed. DE #31 (Response). Raven Rock replied. DE #32 (Reply). The matter is ripe for consideration. For the following reasons, the Court **DENIES** DE #30. A jury must decide Frazier's surviving negligence claim.

I.  BACKGROUND[1]

On February 19, 2016, Frazier went to Raven Rock, a clinic in Letcher County, to receive dialysis treatment. *See* DE #27 (Frazier Depo.), at 46 (Depo. p. 45). This was a frequent occurrence. *See id.* at 33, 47 (Depo. pp. 32, 46); DE #26 (Stewart Depo.), at 11, 24-25. Frazier receives such treatment thrice weekly at the clinic. While entering, he observed that an entrance mat was "turned up," and continued toward it. As he tried to cross the mat, Frazier's foot caught it, and he fell. In Plaintiff's own words:

> Q: On February 19, 2016, did you notice any problem with the mat or rug that was in the entranceway?

---

[1] Under the summary judgment standard, the Court assesses the facts in favor of Frazier, the non-movant. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).

1

> A: It was turned up and I – and I didn't see it. I mean I saw it but what I'm saying, I was talking to somebody. Instead of stepping over it, I hooked my foot on it.
>
> Q: When did you notice that the rug was turned up?
>
> A: When I walked – opened the door. It's got two doors and I pushed the door and when I saw it, what it shoulda – I just did – I didn't pick my feet up I guess and I hooked it. . . .
>
> Q: And you walked over the rug.
>
> A: Well, I – I thought I did but I hooked my foot on it and that's what throwed me. I thought I had my foot over it but I didn't.

DE #27, at 49-50 (Depo p. 48-49); *see also id.* at 57 (Depo. p. 56) (Q: "When you opened up the door to talk into the entranceway, did you see the rug with an end folded up – A: "Yes."); *id.* ("I thought I got over it but I hooked my foot on it; and when I fell, . . . it was still hung, I couldn't get it loose."); *id.* (confirming that his "foot got hung on the folded part of . . . the rug"). By "turned up," Frazier clarified he meant "folded over on itself." *Id.* at 51 (Depo. p. 50). Plaintiff estimated the fold to be about "three inches, two inches, something like that." *Id.* at 106 (Depo p. 105) (characterizing the mat fold as not "big," but "noticeable").

Witness John Stewart, who regularly ferried Frazier to dialysis, described the event as follows:

> Q: Well, tell us what you recall about the incident of February 19, 2016. You said you were with Mr. Frazier?
>
> A: Yes. I take him to dialysis on Mondays, Wednesdays, and Fridays. And, you know, he had got out of the truck, and he was walking in the door, and the rug was rolled up in the front of the door. And he tripped over it and landed into the other door – the swinging doors that goes in.

DE #26, at 5. Stewart later said the mat was "folded over." *Id.* at 7. He estimated the fold to be "probably a good four inches" high, involving "probably a quarter of the rug." *Id.* at

2

18. The depositions describe the extent of Plaintiff's alleged injuries resulting from the fall. Based on this incident, Frazier sued. The parties have litigated the case, and Raven Rock now seeks judgment under Rule 56.

## II. STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec.*, 106 S. Ct. at 1356; *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must generally be suitable for admission at trial. *Alexander v. CareSource*, 576 F.3d 551, 557-59 (6th Cir. 2009).

## III. ANALYSIS

Frazier levels a common-law, premises-liability negligence claim against Raven Rock. "The elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v.*

4

*Bickford*, 529 S.W.3d 717, 729 (Ky. 2016).[2] "Duty presents a question of law, whereas breach and injury are questions of fact for the jury to decide. . . . Causation presents a mixed question of law and fact." *Id.*

Beginning in 2010, the Kentucky Supreme Court has effected "seismic" change in the Commonwealth's negligence law. *See Grubb v. Smith*, 523 S.W.3d 409, 415-21 (Ky. 2017) (narrating the evolution); *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 904 (Ky. 2013) (stating a desire to further Kentucky's "slow, yet steady, progress to modernize our tort law and eliminate unfair obstacles to the presentation of legitimate claims").[3] The core of the high court's reasoning aims to advance a "determined effort" to "limit holdings" that a danger "is 'not unreasonable as a matter of law,' to those rare instances where they are justified." *Grubb*, 523 S.W.3d at 418 (majority opinion). The court's "intention [is] to return most open and obvious cases to jury consideration[.]" *Id.* Federal courts have recognized this. *See, e.g.*, *Dunn v. Wal-Mart Stores E., LP*, 724 F. App'x 369, 374 (6th Cir. 2018) ("[T]he Kentucky Supreme Court has repeatedly and explicitly declared that, under comparative fault, the unreasonableness and foreseeability of the risk of harm is normally a question for the jury to determine in deciding whether the defendant breached its duty of care in all but the rarest of circumstances.").

---

[2] The parties agree that substantive Kentucky law applies in this diversity case; the Court, accordingly, undertakes no independent choice-of-law analysis. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).

[3] The effort began with *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010), and continued via *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891 (Ky. 2013), *Shelton*, *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288 (Ky. 2015), *Goodwin v. Al J. Schneider Co.*, 501 S.W.3d 894 (Ky. 2016), and *Grubb*. The Court has carefully considered every word of these cases. The critical cases, in the open-and-obvious context, are *McIntosh*, *Shelton*, *Carter*, *Goodwin*, and *Grubb*.

The first question, which Raven Rock does not directly or otherwise contest, concerns duty existence. "Generally speaking, a possessor of land owes a duty to an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Shelton*, 413 S.W.3d at 909; *see also Webb*, 413 S.W.3d at 897. "Of course, possessors are not required to ensure the safety of individuals invited onto their land; but possessors of land are required to maintain the premises in a reasonably safe condition." *Id.*

Raven Rock does not attempt to differentiate between landowners and land possessors, which cases often use (seemingly) interchangeably. Whatever the variance(s) between the terms may be, *compare Grubb*, 523 S.W.3d at 422 (opinion for 3 Justices of Hughes, J.)*, with id.* at 433-34 (opinion for 3 Justices of Venters, J.), Raven Rock does not contest its status as a land possessor, the post-*Grubb* key. *See, e.g.*, DE #30-1, at 3-4. Defendant also nowhere contested that Frazier, who had business dealings with Raven Rock via dialysis treatment, was an invitee. *See id.* at 3; *see also* DE #26, at 41-42; *Carney v. Galt*, 517 S.W.3d 507, 511 (Ky. Ct. App. 2017). Invitee status impacts duty formulation.

Accordingly, as a land possessor, Raven Rock owed Frazier, an invitee, a duty "to discover unreasonably dangerous conditions on the land and either eliminate or warn of

them"[4] and to generally "maintain the premises in a reasonably safe condition." *Shelton*, 413 S.W.3d at 908-09. Additionally, Raven Rock does not dispute that it owed Frazier an "overarching duty of reasonable care," that is, a duty "to exercise ordinary care in [its] activities to prevent foreseeable injury." *See Webb*, 413 S.W.3d at 897; *see also Shelton*, 413 S.W.3d at 910 (countenancing a land possessor's "general duty of reasonable care" separate from "the more specific duty associated with" premises-liability particulars). A duty, thus, unquestionably existed. *See also id.* at 911 ("[A]n open-and-obvious condition does not eliminate a landowner's duty.").

The next question is whether a jury could reasonably find a Raven Rock breach. The Court answers affirmatively. Indeed, Raven Rock's arguments are counter to bedrock principles of comparative fault and mirror (or outright repeat) those rejected, time and again in recent years, by the Kentucky Supreme Court.

---

[4] "The open-and-obvious doctrine merely eliminates the duty to warn of," not necessarily the duty to eliminate, "a condition because the condition itself serves as ample warning." *Webb*, 413 S.W.3d at 897-98. Relatedly, a "land possessor may still owe a duty of reasonable care, which may require him to take other reasonable steps to protect [an] invitee against the known or obvious condition." *McIntosh*, 319 S.W.3d at 390 (internal quotation marks and alteration removed); *see also Shelton*, 413 S.W.3d at 907 ("emphasiz[ing] that the existence of an open and obvious danger does not pertain to the existence of duty" and holding that "a land possessor's general duty of care is not eliminated because of the obviousness of the danger").

Additionally, Raven Rock's argument concerning actual or constructive notice of the folded-up mat, *see* DE #30-1, at 4-5, is unavailing. *Heinrich v. Kroger Co.*, 2 F. App'x 413 (6th Cir. 2001), the only case Defendant cites on this topic, is pre-*McIntosh* and thus of little import. Raven Rock had the overarching duty itself to "discover" unreasonably dangerous conditions, as well as to generally maintain the premises in a reasonably safe condition. *See Shelton*, 413 S.W.3d at 908-09. The circumstances surrounding the incident and the folded-up mat will be for the jury to consider. Frazier testified that he had "complain[ed]" to Raven Rock "about the rugs" various "different times" prior to this incident. DE #27, at 53 (Depo. p. 52); *see also id.* at 56, 68 (Depo. pp. 55, 67). The jury will evaluate the care taken by all concerned.

The question of breach is factual and often inappropriate for summary determination by the Court. *See Patton*, 529 S.W.3d at 729 (categorizing breach as a "question[] of fact for the jury to decide"); *Grubb*, 523 S.W.3d at 421 (majority opinion) (holding that the question of the "unreasonableness of the risk of harm" as to a condition is "almost always . . . properly categorized as a factual one"); *see also Dunn*, 724 F. App'x at 374 ("[T]he Kentucky Supreme Court has repeatedly and explicitly declared that . . . the unreasonableness and foreseeability of the risk of harm is normally a question for the jury to determine in deciding whether the defendant breached its duty of care in all but the rarest of circumstances.").

As some examples, an "unreasonable risk could be created by a 'simple curb' outside an emergency room (*McIntosh*), wires on the floor near a hospital bed (*Shelton*), ice in the parking lot of a hotel after a winter storm (*Carter*), the slipperiness of a wet hotel bathtub (*Goodwin*), and a small pothole between the pumps of a gas station (*Grubb*)." *Id.* Further, Kentucky courts have found summary judgment inappropriate "because the reasonableness of the risk and foreseeability of the harm were questions of fact in cases where the plaintiff tripped on the corner of a pallet protruding from the bottom of a store display, fell when stepping backward onto uneven pavement at a gas station, or tripped over a concrete flower pot placed near the exit of a banquet hall." *Id.* at 374-75 (citing cases).

So too here. If the circumstances of the curb in *McIntosh*, the wires in *Shelton*, the bathtub in *Goodwin*, and the pothole in *Grubb* presented triable issues, so do those of the folded-up mat, as to Mr. Frazier. The reasonableness of Raven Rock's premises maintenance, the reasonableness of Frazier's behavior, and the foreseeability of the

8

incident (a person—especially a person present for dialysis—tripping over a folded-up entranceway mat) are questions subject to rational disagreement, requiring submission of the matter to a jury.⁵

As to many of Raven Rock's arguments, the Court merely repeats *McIntosh*'s pathmarking direction:

> The lower courts should not merely label a danger as "obvious" and then deny recovery. Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury, he can be held liable.

319 S.W.3d at 392; *see also Grubb*, 523 S.W.3d at 417 (majority opinion) (disparaging holdings like the one Raven Rock seeks as an antiquated part of "the old common law"). According to the Commonwealth's high court, "considerations of the obviousness of a hazard" are "better addressed in deciding whether the defendant breached" the applicable duty. *Carter*, 471 S.W.3d at 297. Directly put: "Instead of killing a case prematurely because of the obvious nature of a hazard, most non-frivolous cases will now be allowed to . . . go before a jury to determine whether there has been tortious conduct at all and, if so, to apportion fault among the parties." *Id. Carter* continued:

> [A] land possessor's general duty of ordinary care is not eliminated simply because a hazard is obvious. The question is rather whether the landowner could reasonably foresee a land entrant <u>proceeding in the face of the danger</u>, which goes to the question whether the universal duty of reasonable care was breached. In Mrs. Shelton's case, it was obvious that she was going to continue to care for her very sick husband, wires or no wires. After *Shelton*, if such events are foreseeable and the landowner has not made reasonable efforts to correct the problem which causes harm to a plaintiff, then the landowner has breached his general duty of reasonable

---

⁵ The Court does not base this decision in any way on Frazier's submissions regarding the Hughes report and the International Building Code. Plaintiff nowhere states a negligence *per se* theory. Further, Plaintiff cites codes either not in effect or from the wrong iteration or version.

9

> care. . . . The open-and-obvious nature of a hazard is, under comparative fault, no more than a circumstance that the trier of fact can consider in assessing the fault of any party, plaintiff or defendant.

471 S.W.3d at 297 (emphasis added); *see also McIntosh*, 319 S.W.3d at 391 (decrying "the incompatibility between the traditional open and obvious rule and comparative fault"). The Court effectuates these principles in the summary judgment denial here.

An excerpt from *Grubb* is particularly apt:

> While there was no serious dispute that the "hole" here was "obvious," for these purposes, neither was there any dispute that it was located in an area—the driveway directly between gas-pump islands—heavily trafficked by both pedestrians and automobiles. A reasonable fact-finder could readily have believed that Speedway could and should have anticipated a duly cautious pedestrian's being distracted momentarily by a moving car or blinded momentarily by a car's headlights so as to encounter the pothole notwithstanding its obviousness. Under the comparative fault doctrine, since Speedway could reasonably be thought to have breached its duty to the careful, Teresa's claim remained viable even though by her own admission she was careless.

523 S.W.3d at 419 (majority opinion) (footnote removed). As applied to Frazier, even if the folded-up mat was "obvious," there is no dispute that it was located in an area heavily (and necessarily) trafficked by pedestrians—the entrance to the clinic. *See also* DE #26, at 37-38. "A reasonable fact-finder could," thus, conclude that Raven Rock "could and should have anticipated a duly cautious pedestrian's being distracted momentarily . . . so as to encounter the [folded-up mat] notwithstanding its obviousness." *Grubb*, 523 S.W.3d at 419. Accordingly, Raven Rock "could reasonably be thought to have breached its duty." *Id.*

That Frazier in fact saw the folded-up mat—a point of much emphasis by Raven Rock—is but one factor the jury will consider when apportioning comparative blame. *See McIntosh*, 319 S.W.3d at 390-91 ("Whether the danger was known and appreciated by

10

the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for the defendant to foresee the harm, are all relevant considerations that provide more balance and insight to the analysis than merely labeling a particular risk 'open and obvious.'"); *see also Shelton*, 413 S.W.3d at 911. Indeed, an open-and-obvious danger is "a heightened type of danger which places a higher duty on the plaintiff to look out for his own safety. Such a condition, being open and obvious, should usually be noticed by a plaintiff who is paying reasonable attention." *McIntosh*, 319 S.W.3d at 392.

That said, Frazier's potential carelessness now "bear[s] only on h[is] comparative fault rather than [acting] as an absolute bar to h[is] recovery." *Id.* at 394; *see also Carter*, 471 S.W.3d at 298 ("[A] landowner is not excused from his own reasonable obligations just because a plaintiff has failed to a degree, however slight, in looking out for his own safety."). A land possessor, simply put, is not "absolved, *ipso facto*, . . . from liability for injuries resulting from known **or** obvious conditions." *Shelton*, 413 S.W.3d at 906 (boldface added). Thus, as the Kentucky Supreme Court has directly, unequivocally held, the fact that Frazier knew of the potential hazard is not the sockdolager Raven Rock wishes. Indeed, Mrs. Shelton "concede[d] that . . . she was aware of the various wires, cables, and cords," *id.* at 904, but Kentucky's high court nevertheless refused to clear Cardinal Hill of liability. Likewise, Mr. Goodwin was obviously aware of the hotel bathtub "as he was getting into [it] to take a shower," yet the Kentucky Supreme Court held that the Galt House could still face liability. *Goodwin*, 501 S.W.3d at 895. A like reaction meets the arguments concerning Plaintiff's familiarity and frequency of

11

encounter with the entrance to, and mats at, Raven Rock—these will merely be factors in the jury's comparative fault calculus. *See McIntosh*, 319 S.W.3d at 394-95.

The majority position embodied in § 343A(1) of the Restatement (Second) was fulcral for Kentucky's shift in "open and obvious" treatment—from categorical bar to comparative factor. *See McIntosh*, 319 S.W.3d at 389–90 (quoting Restatement (Second) of Torts § 343A(1) (1965) and noting its "persuasive power"). Foundational to § 343A(1) is the idea that, despite a person knowing of and proceeding to encounter a danger, the involved landowner can yet be negligent. *See Greer v. Kaminkow*, No. 7:17-CV-120-REW-EBA, 2019 WL 2870092, at *8 n.14 (E.D. Ky. July 3, 2019) (collecting cases and noting that "the universal duty applies even if a hazard is open and obvious"). This is because harm to the person (even the person with knowledge) may still be reasonably foreseeable to the landowner. Thus, where a person, relative to a risk, might be distracted, might reasonably disregard or fail to protect against the risk, or might forge on to a destination despite the risk, a jury must assess any persisting foreseeable harm. *See Schmidt v. Intercontinental Hotels Grp. Res., Inc. & Hotel*, 850 F. Supp. 2d 663, 670 (E.D. Ky. 2012) (discussing *McIntosh*'s adoption of § 343A principles). Here, Frazier required dialysis three times per week. He was 70 years old and weighed 377 pounds. Just as he entered the clinic, a place he knew well, he saw the folded mat. He had encountered such a problem before. Frazier, as he conversed with his fellow invitees and after a quick reckoning, tried to step over the mat. That was the wrong call and it may have been unreasonable. Still, a rational jury could find it reasonably foreseeable (to Raven Rock) that Frazier (and others like him) would proceed through the doors to his medical appointment. A reasonable jury could believe that Frazier understandably

mistook or miscalculated the degree of risk, his own abilities, and the comparative need to enter the clinic. This patient or patron calculus exercise is much like that applicable to Mrs. Shelton—she was likely going to kiss her husband, wires or no, just as Frazier was likely to enter the mat-fronted clinic, folded rug or no. There is record proof of prior complaints about mat folding and bunching. There is no evidence regarding how Raven Rock went about policing its grounds, on this or any day. The jury has the final say on this scenario, per Kentucky's clear case directives.

Kentucky courts have recognized two general exceptions to the normal rule of jury determination. First, the parties do not suggest that "public policy" here "require[s]" that this "risk-creating condition be deemed not unreasonable and thus excepted from [the applicable] duty of care." *Grubb*, 523 S.W.3d at 418 (majority opinion). Second, based on the Court's review of the record, this is not a case where Frazier's conduct was "clearly the only fault" of his injury. *See id.* The Court could not say, as a matter of law, that the "risk-creating condition on the property" could not have "been corrected by any means" or that it is "beyond dispute that [Raven Rock did] all that was reasonable." *Id.*; *see also, e.g.*, *Webb*, 413 S.W.3d at 899-900. Indeed, Raven Rock could have simply monitored conditions more closely and unfolded the mat, as Stewart easily did post-fall. *See* DE #26, at 39-40. Frazier "did not fall into a grease pit." *Grubb*, 523 S.W.3d at 419 (majority opinion) (contrasting *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 527 (Ky. 1969)).

A "rational fact-finder could deem [Frazier]'s injuries," at least in part, "the result of [some]thing [other than] h[is] own fault[,]" *Grubb*, 523 S.W.3d at 418, to wit, the folded-up mat greeting people entering Raven Rock. That is the main point of

comparative fault: for a jury to apportion blame "based on the extent a party's breach"—even the plaintiff's own breach—"caused or helped cause harm to the plaintiff." *Carter*, 471 S.W.3d at 298; *see also Grubb*, 523 S.W.3d at 415 ("Under the comparative-fault regime, the fact finder is tasked with apportioning fault for the plaintiff's injuries between (or among) those responsible, with the defendant's liability for the plaintiff's damages proportionate to his or her share of the fault."). Accordingly, neither exception applies.

By this result, the Court assiduously avoids "substituting its view of reasonably debatable facts for that of the fact-finder." *Grubb*, 523 S.W.3d at 418 (majority opinion). The "reasonableness of a risk involves some manner of balancing the costs or burdens of mitigating it against the likelihood and severity of the injuries it threatens. In [Kentucky] law, that determination, that balancing is ordinarily deemed a matter of fact to be addressed by the jury." *Id.* at 417. Accordingly, the question of breach is for the jury.[6]

## IV. CONCLUSION

Per this analysis, the Court **DENIES** DE #30.

This the 17th day of July, 2019.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge

---

[6] Raven Rock makes no argument as to negligence elements 3 and 4. The Court's review of the record indicates triable issues as to those elements, as well.